Filed 10 July 27 P4:24
Loren Jackson - District Clerk
Harris County
ED101J015883783
By: Velina Brooks

CAUSE NO. _____

| | | |
|---|---|---|
| JAMES P. KERR; RICHARD HOOVER; STEPHEN P. ADAMS; MARY HOOVER; DALE E. GALE; BRUCE W. GALE; JACOB P. CUKJATI, IV; NATALIE F. CUKJATI; LORI CUKJATI; JIMMY A. SCHUMACHER; CARLA SCHUMACHER; ERIC RANDOLPH; WILLIAM McILVRIDE; CARL L. ULEPICH; CHARLES L. WEST; DON SCHUMACHER; MICHAEL PAUL LeBLEU, Individually and as Representatives of a Class of Similarly-Situated Individuals | § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT OF |
| **Plaintiffs** | § § § | |
| VS. | § § § | HARRIS COUNTY, TEXAS |
| EXOBOX TECHNOLOGIES CORPORATION; ROBERT B. DILLON; SCOTT COPELAND; REGINALD GOODMAN; MICHAEL WITTENBURG; MARC PERNIA; MICHAEL WIRTZ; RICHARD EVANS, M.D.; ROBERT L. SONFIELD, JR.; JASON LANDESS; SYDNEY BARRETT; JEFFREY BRADLEY; DONALD BRADLEY; MARC LANE; ROGER BREWER; ALEXANDERIA K. BLANKENSHIP; WILLIAM SKLAR; JAMES L. JIMMERSON; and LESLIE DANYEL OWENS-SWINT | § § § § § § § § § § § § § § § § § § | |
| **Defendants** | § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' CLASS ACTION PETITION

TO THE HONORABLE JUDGE AND JURY OF SAID COURT:

COME NOW, James P. Kerr, Richard Hoover, Mary Hoover, Stephen P. Adams, Dale E. Gale, Bruce W. Gale, Jacob P. Cukjati, IV, Natalie F. Cukjati, Lori Cukjati, Jimmy A. Schumacher, Carla Schumacher, Eric Randolph; William McIlvride, Charles L. West, Carl L. Ulepich, Don Schumacher, and Michael Paul LeBleu (referred to collectively as "Plaintiffs" or "Class Plaintiffs"), Individually and as Representatives of a Class of Similarly-Situated Individuals, filing this their Plaintiffs' Class Action Petition complaining of Defendants Exobox Technologies Corporation; Robert B. Dillon; Scott Copeland; Reginald Goodman; Michael Wittenburg; Marc Pernia; Michael Wirtz; Richard Evans, M.D.; Robert L. Sonfield, Jr.; Jason Landess; Sydney Barrett; Donald Bradley; Jeffrey Bradley; Marc Lane; Roger Brewer; Alexanderia K. Blankenship (f/k/a Joyce Waterman); William Sklar; James J. Jimmerson; and Leslie Danyel Owens-Swint, and in support thereof would respectfully show this Court and Jury as follows:

## I. DESIGNATION OF DISCOVERY CONTROL PLAN
## AND REQUEST FOR DISCLOSURE UNDER TEX. R. CIV. P. 194

1.      Plaintiffs expect that discovery in this cause would proceed most appropriately under Level 3, and request that the Court enter appropriate discovery control orders in accordance therewith.

2.      Pursuant to Rule 190.4 of the Texas Rules of Civil Procedure and, pursuant to Rule 194, **Defendants are requested to disclose, within 50 days of service of this request, the information or material described in Rule 194.2(a)-(l).**

## II. PARTIES

3.      Plaintiff James P. Kerr ("Kerr") is and was a resident of Seabrook, Harris County, Texas, at the time that the wrongful conduct occurred at issue in this case.  Plaintiffs Richard and Mary Hoover ("Hoover") are and were residents of Pasadena, Harris County, Texas, at the time

that the wrongful conduct occurred at issue in this case.  Plaintiff Dale E. Gale ("Dale Gale") is and was a resident of Pasadena, Harris County, Texas, at the time that the wrongful conduct occurred at issue in this case.  Plaintiff Bruce W. Gale ("Bruce Gale") is a resident of College Station, Texas.   Plaintiffs Jacob P. Cukjati, IV, Natalie F. Cukjati, and Lori L. Cukjati ("Cukjati") are residents of Pensacola, Florida.   Plaintiff Eric Randolph ("Randolph") is a resident of Houston, Harris County, Texas.   Plaintiff William McIlvride ("McIlvride") is a resident of Seattle, Washington.  Plaintiff Stephen P. Adams ("Adams") is a resident of Pueblo West, Colorado.  Plaintiff Carl Ulepich ("Ulepich") is a resident of Frontenac, Kansas.  Plaintiff Charles L. West ("West") is a resident of Conroe, Texas.  Plaintiff Michael Paul LeBleu ("LeBleu") is a resident of Fredricksburg, Texas.  Plaintiffs Jimmy A. Schumacher and Carla Schumacher ("Schumachers") are residents of Kerville, Texas.  Plaintiff Don Schumacher ("Don Schumacher") is a resident of Corpus Christi, Texas.

4.	Defendant Exobox Technologies Corporation ("Exobox") is a foreign corporation licensed to do business in the State of Texas with its principal place of business located at 1021 Main Street, Suite 1150, Houston, Harris County, Texas 77002.  Exobox may be served with citation and notice of this lawsuit by serving its registered agent for service of process, CT Corporation System, located at:  350 N. St. Paul St., Suite 2900, Dallas, Texas  75201-4234.

5.	Defendant Robert B. Dillon has been the President, Chief Executive Officer and Chairman of the Board of Exobox. Dillon may be served with citation and notice of this lawsuit by serving him at his place of business located at:  2121 Sage Road, Suite 200, Houston, Texas 77056.

6.      Defendant Scott Copeland has been listed as the Vice President of Operations and Director of Exobox.  Copeland may be served with citation and notice of this lawsuit by serving him at his place of business located at:  2121 Sage Road, Suite 200, Houston, Texas  77056.

7.      Defendant Reginald Goodman has been listed as the Manager of Information Systems of Exobox.  Goodman may be served with citation and notice of this lawsuit by serving him at his place of business located at:  2121 Sage Road, Suite 200, Houston, Texas  77056.

8.  .   Defendant Michael Wittenburg has been listed as the Vice President of Marketing, Secretary, Treasurer and Director of Exobox. Wittenburg may be served with citation by serving him at his place of business located at:  2121 Sage Road, Suite 200, Houston, Texas 77056.

9.      Defendant Marc Pernia has been listed as the Chief Product Development Administrator and Director of Exobox. Pernia may be served with citation and notice of this lawsuit by serving him at his place of business located at:  2121 Sage Road, Suite 200, Houston, Texas  77056.

10.     Defendant Michael Wirtz has been listed as the Chief Financial Officer and Vice President of Exobox.  Wirtz may be served with citation and notice of this lawsuit by serving him at his place of business located at:  2121 Sage Road, Suite 200, Houston, Texas  77056.

11.     Defendant Richard A. Evans, M.D., has been listed as a Director of Exobox. Evans may be served with citation and notice of this lawsuit by serving him at his residence located at: 1709 Haver, Houston, Texas  77006.

12.     Defendant Robert L. Sonfield, Jr. is a Houston lawyer that participated in creating the reverse merger resulting in Exobox, among other things, and has his primary office located in Houston, Harris County, Texas.  Sonfield may be served and notice of this lawsuit by serving

him at his office and place of business located at:  770 South Post Oak Lane, Suite 435, Houston, Texas  77056.

13.     Defendant Jason Landess is a lawyer that participated in creating the reverse merger resulting in Exobox, among other things, and has his primary office located in Las Vegas, Nevada.  Landess may be served with citation and notice of this lawsuit by serving him at his office and/or place of business located at: 7054 Big Springs Court, Las Vegas, Nevada  89113.

14.     Defendant Sydney Barrett is a stock broker in Houston, Harris County, Texas who participated in the wrongful acts and conduct by facilitating the sale of shares of stock to the general public based on the fraudulent acts and misrepresentations, and securities violations, among things.  Barrett may be served with citation and notice of this lawsuit by serving her at her residential address located at: 5644 Westheimer, No. 189, Houston, Texas  77056.

15.     Defendant Marc Lane was involved as a co-conspirator in the wrongful acts and events set forth herein, and received substantial sums of money from the benefits of the fraud and securities violations.  Lane is believed to now be overseas, out of the United States, and may be served with citation and notice of this lawsuit wherever he may be found.

16.     Defendant Roger Brewer was involved as a co-conspirator in the wrongful acts and events set forth herein, and received substantial sums of money from the benefits of the fraud and securities violations.  Brewer is believed to now be overseas, out of the United States, and may be served with citation and notice of this lawsuit wherever he may be found.

17.     Defendant Alexanderia K. Blankenship (formerly believed to be known as Joyce Waterman) ("Blankenship") was the girlfriend/acquaintance of Defendant Sonfield, and was actively involved in the fraud and securities violations in conspiracy with Sonfield and certain of the other Defendants.  Blankenship may be served with citation and notice of this lawsuit by

serving her at the residential address where she is believed to secretly and covertly reside or most likely can be found:  11431 Noblewood Crest Lane, Houston, Texas  77082.

18.     Defendant  William  Sklar  ("Sklar")  is  a  resident  of  Canada  that  was  actively involved in the conspiracy and fraud relating to accounting work done to "clean up" the shell entity used in the reverse merger and other illegal and wrongful actions and conduct as set forth herein.  Sklar may be served with citation and notice of this lawsuit by serving him at his place of business located at:  Willmar Management Corporation, 513 Rose Lawn Avenue, Toronto, Canada, ON M5N 1K2.

19.     Defendant James J. Jimmerson ("Jimmerson") is a Las Vegas attorney that was actively involved in the scheme and conspiracy to accomplish the illegal acts as set forth herein, and was involved in creating, facilitating and/or perpetuating the "box job" stock/securities sales, and working in conjunction with Jason Landess.  Jimmerson may be served with citation and notice of this lawsuit by serving him at his office and place of business located at: 415 South 6th Street, Suite 100, Las Vegas, Nevada  89101.

20.     Defendant  Leslie  Danyel  Owens-Swint  ("Swint")  is  formerly  a  member  of Defendant Sonfield's law firm, and was actively involved in the scheme and conspiracy to sell, or facilitate the sale of, illegal and unregistered securities as set forth herein, among other things. Swint may be served with citation and notice of this lawsuit by serving her at her place of residence located at:  7442 Jacobs Well Drive, Richmond, Texas  77407.

21.     Defendant Jeffrey Bradley ("Jeffrey Bradley") was involved as a co-conspirator in the wrongful acts and events set forth herein, and received substantial sums of money from the benefits of the fraud and securities violations.  Jeffrey Bradley is believed to reside and do

business in Las Vegas, Nevada, and may be served with citation and notice of this lawsuit at: 9116 Covered Wagon Drive, Las Vegas, Nevada 89117.

22.     Defendant Donald Bradley ("Donald Bradley") was involved as a co-conspirator in the wrongful acts and events set forth herein, and received substantial sums of money from the benefits of the fraud and securities violations.  Donald Bradley is believed to reside and do business in Las Vegas, Nevada, and may be served with citation and notice of this lawsuit at: 9116 Covered Wagon Drive, Las Vegas, Nevada 89117.

### III. VENUE

23.     Venue is proper in Harris County, Texas, because the events made the basis of this action occurred in whole or in part in Harris County, Texas, and the Corporate Defendant, Exobox, has its primary office located in Houston, Harris County, Texas.  Venue is proper in Harris County, Texas, pursuant to Civil Practices and Remedies Code §15.002(a)(1).

24.     The monetary damages suffered by Plaintiffs exceed the minimum jurisdictional limits of this Court.  All conditions precedent to Plaintiffs' recovery have occurred or have been performed or met.

### IV. FACTUAL BACKGROUND

25.     Exobox was created and operated by Defendants as a sham corporation designed to provide benefit to the attorneys, officers, directors and brokers that participated in and orchestrated the reverse merger and "operations" of the corporation.  Defendants also controlled the float of Exobox stock in the marketplace, failed to make proper disclosures to the Class, and engaged in insider transactions, among other things, all designed to provide financial benefit to Defendants to the detriment of Exobox and the Class Members.  In the process, Defendants violated Texas and Federal securities laws, and committed fraud and misrepresentations.

7

Plaintiffs were investors who relied on the representations and false statements; purchased stock in Exobox; were defrauded and misled; and were the victims of the securities violations and other wrongful acts in which Defendants engaged.

26.     Defendants Landess, Jeffrey Bradley, Donald Bradley, and Sonfield, through a series of corporate filings and transactions, created Exobox through a reverse merger.  In this process, sham "stock powers" were granted and/or created, along with backdated stock certificates that incorrectly reflected the stock could be traded under false exemptions to the registration provisions of the Texas and Federal securities laws.  Following the reverse merger, which was accomplished with the help of Defendants Marc Lane and Roger Brewer, virtually all of the "free trading" public "float" of Exobox was controlled by Sonfield, Lane and Brewer. Millions of dollars of Exobox stock was sold and transferred into the public markets, to be purchased by Class Members, through "grey markets" based on the dissemination of false and fraudulent statements, representations, and transactions.  These transactions were designed to avoid and did avoid proper disclosures of information, and/or the dissemination of false and fraudulent information and representations, to the Class Members.

27.     In later discoveries, Defendants Landess and Sonfield backdated documents to avoid required disclosures to the Class Members.  False and fraudulent opinion letters were written and disseminated by Defendants reflecting, to the effect, that most of the stock shares (with minor exceptions) were freely tradable without registration in accordance with the Texas securities laws and/or the registration exemptions found in Rule 144 under the Securities Act of 1033 ("Securities Act").  In addition to or in the alternative, Defendant Sonfield engaged in wrongful conduct that included making public filings with the Securities and Exchange Commission ("SEC") that omitted the material fact that he, Lane and Brewer controlled almost

all of Exobox's public float.  Because of these material omissions, Sonfield violated the antifraud provisions of the securities laws, and aided and abetted violations of the reporting provisions of these securities laws.  Landess and Sonfield were actively involved in the scheme and conspiracy to violate state and federal securities laws, and benefitted financially from the wrongful and illegal conduct as set forth herein.

28.     Defendant Swint was working for Sonfield at the time of the illegal acts and transactions set forth herein.  Swint was actively involved in performing various illegal and wrongful tasks and actions that helped Sonfield and the other Defendants achieve the fraud and securities violations about which Plaintiffs complain, and was a co-conspirator in these transactions.  Additionally, Swint is believed to have received shares of the stock at issue.

29.     Defendant Sklar was actively involved in performing, for pay and compensation, certain accounting-type work to "clean up" the shell entity used in the reverse merger, and in the creation of stock certificates to sell to Class Members.  He was actively involved in the fraud, scheme and conspiracy that resulted in the fraudulent stock sold to the public.  Sklar boasted about the fraud and illegality of the actions in which Defendants were involved at the time.  Defendant Jimmerson was actively involved in concert and conspiracy with Landess and others to create the "box job" and to launder illegal and unregistered stock to Class Members and to the public.  Jimmerson worked in conjunction with Landess to accomplish stock in Exobox that was transferred to Landess and to Jimmerson, and which was then sold to Class Members.  Sklar and Jimmerson were actively involved in the scheme and conspiracy to violate state and federal securities laws, and benefitted financially from the scheme and conspiracy set forth herein.

30.     In addition to or in the alternative, Defendants violated the reporting and disclosure requirements of the Securities Exchange Act of 1934 ("Exchange Act") by not

disclosing certain of the Defendants' control of Exobox stock holdings; violated the registration provisions of the Securities Act through their involvement in these unregistered transactions; materially participated in and/or aided and abetted the sale of unregistered securities; and/or materially participated in or aided and abetted the sale of securities based on false and fraudulent information, disclosures and representations, among other things.

31.     Defendant Alexanderia K. Blankenship was actively involved in the fraud and securities violations in conspiracy with Sonfield and certain of the other Defendants by receiving, for no consideration, substantial blocks of Exobox shares following the reverse merger, and selling the stock in unregistered nonexempt transactions for proceeds in the hundreds of thousands of dollars.  She was actively involved in hiding and misrepresenting the ownership and control of substantial portions of the Exobox stock holdings in conjunction with Defendant Sonfield and others, giving the false appearance that the stock was held by certain persons when, in fact, it was held by a select few.  Blankenship benefitted financial from the sale of such stock, and was actively involved in the scheme and conspiracy to violate state and federal securities laws.

32.     Defendants, Dillon, Copeland, Goodman, Wittenburg, Pernia, Wirtz, Evans and Exobox engaged in a series of insider transactions which provided benefits to themselves to the detriment of Exobox and the Class Members.  These Defendants participated in transactions with, and/or conspired with, other Defendants to accomplish the unlawful and illegal sale of unregistered stock, and/or furthered the scheme and conspiracy, by covering up and not fully disclosing the illegal and wrongful actions of the Defendants, to the detriment of the Class Members.

33.     Defendants, Dillon, Copeland, Goodman, Wittenburg, Pernia, Wirtz, Evans and Exobox did in the past and continue in the present day to cover up information relating to the Corporate operations that is material to Class Members.  To this date, there is no mention of the current SEC investigation of Exobox (Civil Action No. 4:08-CV-02351) which is pending in the Southern District of Texas.  Plaintiffs incorporate by reference the allegations set forth in the Complaint in those proceedings.  Moreover, these Defendants continued to engage in a pattern of transactions and misrepresentations that were designed to mislead investors, including transactions that resulted in the transfer of substantial shares and interests in Exobox to others, diminishing and diluting the value of the stock at issue.

## V.  CLASS DEFINITION

34.     The Plaintiffs request certification of this case as a class action.  The proposed class is defined as follows:

> All persons, both individuals as well as business entities, excluding Defendants, who purchased Exobox Technologies Corporation stock.

## VI.  CLASS ALLEGATIONS

35.     Rule 42 of the Texas Rules of Civil Procedure sets forth the elements for maintenance of a class action. Plaintiffs must meet all of the requirements of Rule 42(a), but need only meet one element of Rule 42(b) to maintain this case as a class action.

36.     This case satisfies the four requirements of Rule 42(a), those being set forth as follows:

(1)     **Numerosity.** The members of the Class are so numerous that joinder of all members is impractical;

(2)     **Commonality**. There are questions of law and fact common to the Class;

(3)     **Typicality**.  The claims of the Representative Plaintiffs are typical of the claims of the Class; and

(4)    A**dequate representation.** The Representative Plaintiffs and their counsel will fairly and adequately protect the interests of absent members of the Class.

TEX. R. CIV. P. 42(a)(l)-(4).

### A.    THE CLASS MEETS RULE 42(A)'S NUMEROSITY REQUIREMENT

37.    Plaintiffs hereby respectfully serve notice of their intention, in accordance with TEX. R. CIV. P. 42(c)(1), to promptly move for class certification and of their desire for the parties' counsel to agree on a scheduling order preparatory to a hearing on Plaintiffs' motion for class certification. To this end, Plaintiffs detail herein the grounds on which they will be moving for class certification.

38.    The first element of Rule 42(a) is numerosity. Rule 42(a)(1) requires that the Class be "so numerous that joinder of all members is impracticable." This means that there are so many persons who have claims that it is impractical to have each one join in as a formal party. There are hundreds of persons and entities who have purchased Exobox Stock and have claims against Defendants.  Many of the proposed Class Members do not live close by and their joinder, as separate named parties, would be extremely difficult.

### B.    THERE ARE COMMON ISSUES OF FACT AND LAW WITH RESPECT TO THE CLAIMS OF THE CLASS

39.    The second element of Rule 42(a) is commonality.  The commonality requirement does not mean that all questions of law and fact must be identical, but rather that an issue of law or fact exists that inheres in the complaints of all of the Class Members.

40.    There are many common fact issues to be decided in this case including but not limited to:

(a)    Have the Defendants breached their duties by their actions as Exobox officers, directors and agents?

(b)    Whether the Reverse Merger and activities related thereto constitute a Fraud and Misrepresentation on Class Members?

(c)     Have the Defendants engaged in securities violations, insider trading, fraud and misrepresentations in the sale of unregistered nonexempt stock, and market manipulation to the detriment of Class Members?

**C.     THE REPRESENTATIVE PLAINTIFFS' CLAIMS ARE TYPICAL OF THE CLASS CLAIMS**

41.     The third element of Rule 42(a) is typicality.   Typicality means that the class representatives should have the same interests and suffer the same injuries as the members of the class. The Representative Plaintiffs' claims need only be similar to the other Class Members, not identical. The Representative Plaintiffs need not have suffered the same injuries as other Class Members, but there must be a nexus between the representatives' injuries and the injury of the other Class Members.

42.     The claims of the Representative Plaintiffs in this case are by definition typical of the claims of the class. Every Exobox Stock Owner has a similar, if not identical, claim based on Defendants having engaged in the same, similar and/or identical conduct as to all Class Members.  The Defendants were involved in the same transactions and series of transactions to accomplish the fraud, misrepresentations, and securities violations.  These claims grow out of exactly the same problem transactions.

**D.     THE CLASS WILL BE ADEQUATELY REPRESENTED BY THE REPRESENTATIVE PLAINTIFFS AND PROPOSED CLASS COUNSEL**

43.     The fourth and last element of Rule 42(a) is Rule 42(a)(4)'s requirement that the Representative Plaintiffs "fairly and adequately protect the interests of the class." The two adequacy of representation requirements are: (1) the absence of antagonism between the Representative Plaintiffs and the Class Members; and (2) the assurance that through Class Counsel the Representative Plaintiffs will vigorously prosecute the claims of the Class.

44.     These two elements are undeniably met here. The Representative Plaintiffs do not have conflicts with other Class Members and, in fact, have by bringing this suit shown an

admirable willingness to "stick up" for their fellow Exobox Stock Owners, many of whom lack the ability to bring such an action.   Likewise, Class Counsel is experienced and has available legal resources sufficient to adequately represent the Class.

**E.**      **THE PREDOMINANCE OF COMMON FACTUAL AND LEGAL ISSUES WITH RESPECT TO THE MEMBERS OF THE CLASS**

45.      This case satisfies the requirements of Rule 42(b)(4), those being:

(a)      **predominance of common issues**--that the questions of law and fact common to the members of the class will predominate over questions affecting only individual class members; and

(b)      **superiority of class treatment**--that class treatment is superior to other available methods for fair and efficient adjudication of this controversy.

46.      Rule 42(b)(4) classes are sometimes described as "efficiency classes" in which courts, weighing various factors, determine whether the class action vehicle is superior.   This case certainly meets this description, and supports certification of the Class.

*(1)      COMMON ISSUES PREDOMINATE*

47.      "Predominance of common issues" is not an exercise in issue-counting. The point is to see whether common issues are at the heart of Plaintiffs' claims. The test for predominance is whether common or individual issues will be the object of most of the efforts of the litigants and the court.

48.      If the Court and/or a jury answer the previously-identified issues in the affirmative, all that the proposed Class Members will need to do is have their shares mathematically determined. This simple arithmetic basis is the same mechanism in which all of the proposed Class Members have been damaged.

(2)     *A SINGLE CLASS ACTION IS SUPERIOR TO MULTIPLE INDIVIDUAL LAWSUITS*

49.     Under Rule 42(b)(4), class treatment must also be "superior to other available methods for the fair and efficient adjudication." Because this case affords extraordinary economies to all parties and the judiciary at large, and a class certification is the only way that the vast majority of claimants will ever receive any justice or compensation for injuries and damages, class action treatment is unquestionably superior to any alternatives.

### A.     THIS CLASS ACTION PRESENTS ENORMOUS ECONOMIES FOR THE JUDICIARY AND ALL OF THE PARTIES

50.     Everyone's interests, including Class Members, the judiciary and even the Defendants' legitimate interests are clearly promoted by the efficiency that a class action presents in this case.  Certification of the Class and Subclasses, if any, will greatly promote efficiency because:

(a)     this Court, and the judiciary more generally, will only have to deal with two (Plaintiff and Defendant) groups of lawyers;

(b)     this Court, and the judiciary more generally, will deal with only a single and centralized set of discovery;

(c)     this Court, and the judiciary more generally, will deal with only a single trial procedure; and

(d)     this Court, and the judiciary more generally, will deal with only a single appeal, if one is taken.

51.     The proposed Class numbers in the hundreds.  It is inconceivable that separate lawsuits or interventions by this number, or even a small fraction thereof, one by one, would be as efficient as class treatment of this number of claims. Repeated litigation of the common issues in dozens or even 100 (or more) individual actions would be grossly inefficient, exorbitantly costly and a waste of precious judicial resources.

52.     Certifying a class in this case will also equalize the stakes between Class Members and Defendants and thereby promote greater parity in the presentation of the merits by

both sides.  This will naturally create a situation far more conducive to a fair adjudication of the
controversy.  It would obviously be impossibly expensive for individual Exobox Stock Owners
to each separately hire their own professionals (attorneys and experts) to determine whether, and
in what amounts, these Defendants are liable to them.

**B.      ONLY A CLASS ACTION WILL ALLOW THE VAST MAJORITY OF CLAIMANTS TO
OBTAIN A JUST DETERMINATION OF THEIR CLAIMS**

53.      The single most compelling reason for certifying a class action is that, absent a
class action, the overwhelming number of Class Members will never have their claims heard on
the merits.  This case is the absolute antithesis of a circumstance (such as individual personal
injury claims) where individual plaintiffs need, want, or even are logistically, by and large, able
to control the prosecution of their own claims.  The information, economics, and logistical
barriers will, absent class certification, virtually insure that all but the very largest claimants are
effectively barred from obtaining a decision on the merits or justice.

**C.      RULE 42(B)(4)'S NON-EXCLUSIVE CONSIDERATION LIST ALSO SUPPORTS
CERTIFICATION**

54.      Rule 42(b)(4) also lists several non-exclusive considerations in connection with
determining the superiority issue:  The matters pertinent to the findings include: (a) the interest
of members of the class in individually controlling the prosecution or defense of separate actions;
(b) the extent and nature of any litigation concerning the controversy already commenced by or
against members of the class; (c) the desirability or undesirability of concentrating the litigation
of the claims in the particular forum; and (d) the difficulties likely to be encountered in the
management of a class action.

55.      **Interests in Individual Prosecutions:**   For the reasons already presented,
including especially the fact that individual Class Members lack the economic ability to

individually bring the subject claims, there are no substantial "individual" interests in separately prosecuting the claims asserted in this case.  Instead, the Class Members will overwhelmingly appreciate the fact that the Representative Plaintiffs have championed their cause.  Accordingly, this factor supports class certification.

56.     **This Forum:**  This criteria relates to whether this forum is a sensible location for litigating a larger dispute.  Harris County, Texas, is plainly and logically such a forum.  It is the locale for the corporate office of Exobox, most of the Defendants, and the most common location for Class Members.   Under these circumstances, this factor also strongly supports class certification.

57.     **Other Litigation**:  There is currently an SEC action pending as listed above. There is no other litigation against Defendants with respect to the issues involved in this petition to Counsel's knowledge.

58.     **Management:**  The last consideration listed in Rule 42(b)(4) is "the difficulties likely to be encountered in the management of a class action."   This case is thoroughly manageable.  Multiple securities cases have been successfully managed by courts in Texas and elsewhere.   This action is no more complicated, and indeed is smaller and much more homogenous in terms of the claims raised, than were other similar types of securities cases.

## VII. CAUSES OF ACTION

## COUNT I: FRAUD AND MISREPRESENTATION

59.     Based upon and incorporating the facts set forth above, Defendants made and engaged in false statements, representations, and deceptive acts and practices concerning the sale of unregistered nonexempt securities.  By failing to make appropriate disclosures to the Class Members prior to their purchase of stock relating to the Reverse Merger, insider trading, and self

dealing, Defendants have engaged in Fraud and Misrepresentation to and upon all Class Members.  Defendants and their agents, employees and representatives, made numerous misrepresentations, misstatements and omissions to state that caused Plaintiffs and Class Members to invest in and purchase securities that had little to no value, and that were sold in violation of State and Federal securities laws.   In particular, the misrepresentations, misstatements and omissions to state induced Class Members and Plaintiffs to purchase securities based on false and misleading representations.

60.     The misrepresentations, misstatements and omissions to state were false and were made intentionally, or alternatively were made with gross negligence.   The fraudulent transactions were done in an effort to mislead Class Members.  As a result of the material misrepresentations upon which Plaintiffs and Class Members relied, as well as the failures and omissions to state, Class Members have suffered injuries and damages.  Defendants' fraudulent conduct included acts, omissions or concealment that involved breaches of a legal duty, trust, or confidence justly reposed and that were injurious to Plaintiffs and Class Members by which an undue and unconscionable advantage was taken.

## COUNT II:  VIOLATIONS OF TEXAS AND FEDERAL SECURITIES LAWS

61.     Based upon and incorporating the facts set forth above, Defendants engaged in actions, and participated in schemes and conspiracies that violated state and federal securities laws.  Defendants failed to make appropriate disclosures in offering documents; failed to register stock securities required to be registered; took actions to mislead and misrepresent information and statements concerning Exobox stock; sold nonexempt securities without proper registration and without proper disclosures; sold Exobox stock to Class Members via a "box job;" misled investors and Class Members concerning the workability and viability of its products; engaged in

and made false and misleading statements in offering documents and company information; and engaged in and committed other actions that constitute violations of both Texas and Federal Securities Laws, to the detriment and injury of all Class Members.

## COUNT III:   CONSPIRACY AND AIDING AND ABETTING FRAUD AND VIOLATIONS OF SECURITIES LAWS

62.    Based upon and incorporating the facts set forth above, Defendants committed and engaged in conspiracies to commit the illegal and wrongful acts as set forth herein, and aided and abetted the commission of fraud, misrepresentations, deceptive acts and practices, and violations of securities laws.   Defendants or certain of them entered into a conspiracy and common course of action to achieve an illegal and wrongful result.   Defendants or certain of them combined for purposes of defrauding, misrepresenting and misleading Class Members concerning the sale and purchase of securities in Exobox.   Defendants or certain of them had a meeting of minds to accomplish an unlawful purpose, or to achieve or perpetuate a lawful purpose through unlawful means, actions and transactions.   Defendants or certain of them aided and abetting the violations of state and federal securities laws, the illegal sale of securities, and the fraud and misrepresentations concerning the marketing and sale of stocks as set forth herein. Such actions resulted in substantial damages and injuries to Class Members.

## VIII.  CAUSATION, DISCOVERY AND JOINT LIABILITY

63.    Each and all of the above were the proximate or producing cause of damages to Plaintiffs and Class Members, who are innocent of any fault contributing to or causing these damages.  Using reasonable diligence, neither Plaintiffs nor Class Members discovered, nor were they in a position to discover, the wrongful and illegal acts, practices and transactions committed by Defendants, until recently.   Moreover, Defendants engaged in practices and patterns of practice that were intended to hide and conceal the true nature of the underlying factual events

that are the basis of the claims being brought in this case.  Suit was brought timely based on the discovery of the claims brought herein.  All conditions precedent to Plaintiffs' and Class Members' recovery of damages have been met or have occurred.

64.    Plaintiffs allege and assert, as appropriate, the doctrines of agency, respondent superior and vicarious liability, along with conspiracy and joint responsibility.  Defendants were the instrumentality of, and acted on behalf of, each other to accomplish the illegal and wrongful actions about which this suit is filed.  Defendants engaged in a common course and scope of conduct and activities, which were/are intertwined and related in substantial fashion and to a material degree.  Defendants adopted and ratified the acts and actions of other Defendants.  Accordingly, all Defendants are jointly and severally liable for Plaintiffs' and Class Members' damages and injuries.

## IX. DAMAGES

65.    As a direct and proximate result of Defendants' unlawful acts, Plaintiffs and Class Members suffered, suffer and will continue to suffer economic losses and investment losses.  Plaintiffs and Class Members have suffered and incurred other similar losses and damages, including attorneys' fees and litigation costs.  Accordingly, Plaintiffs seek all general, special, incidental and consequential damages as shall be proven at the time of trial.  Due to the nature of the wrongful acts and transactions as set forth herein; because of the conspiracies and the intertwined nature of the factual events; in light of the relationships of the various parties; and given the manner in which the fraudulent transactions and securities violations were carried out, Plaintiffs seek and request that all actual and consequential damages be assessed against all Defendants jointly and severally.

66.     As a result of Defendants' wrongful and malicious conduct, which was committed intentionally and knowingly or alternatively with gross negligence and reckless disregard, Plaintiffs and Class Members are entitled to recover punitive damages as a jury might award over and above the actual legal damages in an amount: (a) that will adequately and properly punish Defendants; (b) that will serve as a deterrent to Defendants and others; and (c) that will set an example to the community.  Accordingly, Plaintiffs, individually and on behalf of all Class Members, seek punitive damages against Defendants.

67.     Plaintiffs seek pre-judgment and post-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the maximum statutory rate of interest allowed by law because of the delay in receiving payment for the damages and also to avoid unjust enrichment to Defendants.    Plaintiffs also seek injunctive relief enjoining Defendants from carrying out or taking further wrongful and illegal actions to commit the fraud, misrepresentations, and securities violations about which Plaintiffs now complain.

## X.  DEMAND FOR JURY

68.     Plaintiffs demand a jury trial.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs James P. Kerr, Richard Hoover, Mary Hoover, Stephen P. Adams, Dale E. Gale, Bruce W. Gale, Jacob P. Cukjati, IV, Natalie F. Cukjati, Lori Cukjati, Jimmy A. Schumacher, Carla Schumacher, Eric Randolph; William McIlvride, Charles L. West, Carl L. Ulepich, Don Schumacher, and Michael Paul LeBleu, individually and on behalf of a class of similarly-situated individuals, respectfully request that Defendants be cited to appear, and after trial on the merits that Plaintiffs and Class Members be awarded actual and punitive damages, together with pre-judgment and post-judgment interest as

allowed by law, costs of suit, attorneys' fees, and all other relief, in law and equity, to which

Plaintiffs may show themselves and the Class justly entitled.

Respectfully submitted,

KRENEK LAW OFFICES

By: _____

Eddie M. Krenek
Texas Bar No. 11724980
Tricia K. Thompson
Texas Bar No. 24031324
419 Mason Park Blvd.
Katy, Texas 77450
Telephone: (281) 578-7711
Facsimile: (281) 578-8988

ATTORNEYS FOR PLAINTIFFS, Individually and as
Representatives of a Class of Similarly-Situated Individuals